## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 17-33 |
| GREGORY MAGEE, | ) | Judge Nora Barry Fischer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

In this case, Gregory Magee once again seeks relief from his sentence of 87 months' imprisonment and 5 years' supervised release following his convictions for 2 counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d) and 4 counts of bank robbery, in violation of 18 U.S.C. § 2113(a). (*See* Docket Nos. 89; 138). Specifically, he moves for early termination of his supervised release and also seeks to compel the Bureau of Prisons to produce certain records pertaining to the computation of the incarceration portion of his sentence which he believes will support his claim. (Docket Nos. 147; 148). The Government opposes early termination for several reasons including, among others, his commission of violent and dangerous bank robberies where he threatened tellers with firearms on two occasions and a purported bomb in a third instance and the fact that he still owes $38,282.49 in restitution to the financial institutions that he robbed. (Docket No. 150). The Government further contends that the motion to compel is moot because the BOP has now responded to his counsel's FOIA requests, and the appropriate procedure would be to file an administrative appeal if he disagrees with that production. (Docket No. 151). After careful consideration of the parties' positions and for the following reasons, Defendant's motions (Docket Nos. 147 & 148) are denied.

As the Court writes primarily for the parties and has previously set forth a detailed recitation of the facts of this matter in its Memorandum Opinion of November 6, 2020 denying his motions seeking to vacate his sentence under § 2255 and for compassionate release under § 3582(c)(2), (*see* Docket No. 138), it turns to the relevant standards governing motions seeking early termination of supervised release.

When presented with a motion for early termination of supervised release, the Court is tasked with considering of the factors set forth in 18 U.S.C. §§ 3583(e)(1) and 3553(a)(1)-(7) in light of *United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020).   Following the standards set forth in *Melvin*, the Court need not make specific factual findings and it is enough to simply state that the Court has reevaluated the case and Defendant has not demonstrated that early termination "is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).   The Court also need not conduct an evidentiary hearing but is afforded discretion to decide the matter based on the submissions of the parties.   *See e.g., United States v. Sheppard*, 17 F.4th 449 (3d Cir. 2021).   With that said, the relevant section 3553(a) factors in Defendant's case counsel the Court to deny early termination of supervised release at this time.

"The primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." *United States v. Murray*, 692 F.3d 273, 281 (3d Cir. 2012) (quoting *United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2011)).   It is this Court's judgment that the 5-year term of supervised release remains sufficient, but not greater than necessary to facilitate is successful reintegration from an offender who engaged in a spree of violent bank robberies, to becoming a law-abiding member of society.   *See* 18 U.S.C. § 3553(a).

While the Court commends Defendant for his personal growth over the past 32 months that

he has been on supervised release, as is exhibited by the supporting character letters describing his consistent involvement in men's group and other programming at the Salvation Army in Pittsburgh, his supervision thus far has not been without incident. (Docket No. 147). To that end, the Court was advised in April of 2022 that he had tested positive for opiates, and he denied use even after the results were confirmed by a laboratory. (Docket No. 142). Although the Court was concerned, it declined to bring Defendant into court for a hearing and trusted that the Probation Office would redirect him to lawful behavior and monitor his activities. (*Id.*). Then, in May of 2024, the Court signed a modification presented by the Probation Office advising that due to his limited financial means Defendant was unable to pay restitution at a rate of ten percent (10%) of his gross monthly income and adjusted the condition to require him to pay at least $50 per month. (Docket Nos. 144; 145). As such, the record reflects that he has paid only $2,770.51 toward his restitution obligation, a very small portion of the $38,282.49 that remains outstanding. (Docket No. 150 at 3). Yet, Defendant now claims that early termination of supervision is warranted so that he can travel freely to pursue work in a "valuable coin" business and to assist his son who lives in Columbus, Ohio, and has a drug problem. (Docket No. 147). Defendant further argues that his term of supervised release should be reduced because he allegedly overserved his sentence and is seeking BOP records to support this claim. (*Id.*).

In this Court's estimation, the 5-year term of supervised release reflects the seriousness of his offense conduct, promotes respect for the law, serves as just punishment for the offenses, and should deter him and others from engaging in such crimes. *See* 18 U.S.C. §§ 3553(a)(1)-(a)(2). As the Court noted in the prior Memorandum Opinion denying his motion for compassionate release:

[the sentence imposed] reflects the seriousness and gravity of Defendant's criminal conduct in that he committed six different bank robberies across five counties in our District between January and November of 2016, stealing a total of $119,696.00. (Docket No. 74 at ¶¶ 8-15). He used threats of violence in each of these robberies, brandished a firearm in two of them, and showed tellers a bag with wires that he claimed was a bomb in the last robbery. (*Id*.). He terrified bank employees and customers by his actions during these robberies. (Docket No. 101 at 49-50). While Defendant had a limited criminal history prior to these activities, specific deterrence is an important factor in this case because the record reflects that the robberies were methodically planned and his conduct escalated significantly to the point where he used a fake bomb to gain access to the bank vault in the last robbery. (*Id*.).

…

the violent nature of these crimes show that if released early, Defendant may pose a danger to the community if he is unable to stay clean and use his educational background and considerable skills to pursue lawful employment rather than engaging in violent bank robberies to support himself. *See* 18 U.S.C. § 3142(g).

(Docket No. 138 at 15-16).

In addition, there is plainly a need for continuing supervision to monitor Defendant's finances given the report that he has such limited means in order to ensure that restitution payments are being made. It also appears to this Court that early termination of supervision with such a large restitution amount outstanding would not be in the interests of justice. *See e.g., United States v. Biear*, App. No. 21-2425, 2022 WL 1635644, at *1-2 (3d Cir. 2022) (affirming denial of early termination for among other reasons, "most importantly, Biear still had an outstanding obligation of over $3 million in restitution and that supervision would ensure that Biear continued to pay that obligation"); *United States v. Fattah*, No. 23-1064, 2023 WL 4615300, at *2 (3d Cir. July 19, 2023) (affirming denial of early termination for among other reasons, "[t]he [District] Court was also reluctant to terminate given the large sum of restitution [around one million dollars]

that remained outstanding."). To the extent that Defendant desires to travel outside of the jurisdiction for work or to visit family, he should work with the Probation Office to obtain approval and seek leave from the Court to do so.

Finally, the Court agrees with the Government that the motion seeking to compel the BOP to produce documents regarding his detention history is moot, as his FOIA request has now been responded to, and any challenge to same should be addressed through the administrative appeals process outlined by the Government in its response. (Docket No. 151). With that said, in the November 6, 2020 Memorandum Opinion, the Court noted that Defendant's projected release date at the time was January 13, 2023, declined to reduce his 87-month sentence to an effective term of 48 months and noted that he still had more than two years to serve until he reached his projected release date. (Docket No. 138 at 15; *see also* Docket No. 129-5). However, the Probation Office informs the Court that Defendant was actually released from BOP custody on January 20, 2022, which was a full year prior to that projected release date. (Docket No. 142 (indicating that Defendant was released on January 20, 2022 and failed a drug test on March 23, 2022)). Since he was initially arrested on November 8, 2016 shortly after he committed his sixth bank robbery, it appears that he was detained for a total period of 62 months and 12 days. (PIR at ¶ 14). Hence, the Court fails to see how Defendant could demonstrate that he overserved his sentence of 87 months' incarceration and is otherwise not persuaded that his post-hoc disputes about BOP credits would warrant early termination of supervised release.

For all of these reasons and after weighing the relevant factors, the Court declines to exercise its discretion to order early termination at this time. *See Melvin*, 978 F.3d at 52-53. Accordingly, Defendant's Motion for Early Termination [147] is DENIED, without prejudice and

his Motion to Compel [148] is DENIED, as moot.


/s Nora Barry Fischer
Nora Barry Fischer
Senior U.S. District Judge

Dated: November 15, 2024

cc/ecf: All counsel of record

U.S. Probation Office

Gregory Magee c/o Chris Rand Eyster, Esq.